_____

No. 95-4156
_____

United States of America,           *
                                    *
            Appellant,              *
                                    *   Appeal from the United States
      v.                            *   District Court for the
                                    *   District of Minnesota.
Carlos Camacho-Bordes,              *
                                    *
            Appellee.               *

_____

Submitted:  May 17, 1996

Filed:  September 3, 1996
_____

Before MAGILL, LAY, and ROSS, Circuit Judges.

_____

MAGILL, Circuit Judge.


     Pursuant to a plea agreement, Carlos Camacho-Bordes, a Mexican
national, pled guilty in 1985 to possession of cocaine with intent to
distribute, in violation of 18 U.S.C. § 841(a)(1).  Based on this
conviction for a drug trafficking crime, he was subsequently deported.  See
8 U.S.C. § 1251(a)(11).  After unsuccessfully attacking his deportation,
Camacho-Bordes brought the present action under 28 U.S.C. § 1651 to
withdraw his guilty plea, contending that the government breached the plea
agreement.  Although initially denied, the motion was later granted by the
district court after Camacho-Bordes presented new evidence.  Because we
conclude that the plea agreement did not contain an unfulfillable promise
and the government did not breach the plea agreement, we reverse.

Camacho-Bordes lawfully entered the United States in 1979.  Based upon his subsequent marriage to a United States citizen in 1983, he became a lawful permanent resident on November 13, 1983.

In 1985, Camacho-Bordes was arrested on various cocaine distribution charges, arising from incidents occurring in 1983 and 1985.  Two indictments were issued against him, each charging him with two counts of distribution of cocaine and one count of conspiracy to distribute cocaine.  With a possible sentence of fifteen years on each of the six counts, Camacho-Bordes admitted that he faced "a very long possible prison sentence if [he] were to be convicted on all the counts."  Tr. of Proceedings (Change of Plea) at 8 (Dec. 27, 1985).

Camacho-Bordes, in order to lessen the likelihood of deportation following his prison term, pled guilty to one count of possession of cocaine, a violation of 18 U.S.C. § 841(a)(1).  See Appellee's Br. at 2.  In exchange for the plea, the government dismissed the other five charges pending against Camacho-Bordes.  The plea agreement stipulated that "the Government agrees, if requested by Mr. Bordes, to make a written recommendation against deportation to the INS."  Tr. at 3.

At the change of plea hearing, the sentencing district judge, (then) Chief Judge Diana Murphy, spent considerable time with Camacho-Bordes to ensure that he fully understood the terms of the plea agreement:

> THE COURT:  And did you listen while Ms. de la Vega was stating the plea agreement?
>
> DEFENDANT BORDES:  Yes, I did.
>
> THE COURT:  Did she leave anything out that you think is part of the agreement?

DEFENDANT BORDES:  No, I don't think so.

THE COURT:  Do you think that you've been promised any benefit of any type that wasn't mentioned here?

DEFENDANT BORDES:  No.

. . . .

THE COURT:  Part of this agreement is that if you want -- and I'm sure that you may well want the Government to follow up on this -- but that the Government would write a letter recommending that you not be deported.  But are you aware that you could still be deported.

DEFENDANT BORDES:  Yes, I am.

THE COURT:  Okay.  This Court doesn't have any control over that.  Do you understand that?

DEFENDANT BORDES:  I understand that.

THE COURT:  And the U.S. Attorney also doesn't control that.

DEFENDANT BORDES:  I understand.

THE COURT:  Although presumably the INS will consider carefully what the U.S. Attorney says, it doesn't have to do what the U.S. Attorney recommends.  Do you understand that?

DEFENDANT BORDES:  I do.

THE COURT:  So you could face this 15 years in prison, and you could be deported.  Do you understand that?

DEFENDANT BORDES:  I understand that.

Tr. at 5-7.  After the plea was taken, the district court sentenced Camacho-Bordes to eighteen months imprisonment and three years special parole.

While Camacho-Bordes was serving his sentence, the INS instituted deportation proceedings against him, based on his conviction for a drug trafficking crime.  See 8 U.S.C.

-3-

§ 1251(a)(11). Camacho-Bordes conceded his deportability at his deportation hearing before an immigration judge (IJ) on April 27, 1988. Nevertheless, he petitioned for discretionary relief under § 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c), which permits the Attorney General to waive the deportation of a lawfully admitted permanent resident who has resided in the United States for seven years.[1] The IJ noted that the seven-year residency clock started when Camacho-Bordes became a lawful resident in 1983, and not when he first arrived in the United States in 1979. Thus, he was ineligible for a discretionary waiver of deportation under § 212(c) because at the time of the hearing he had been a permanent resident for only five years.

Camacho-Bordes appealed this ruling to the Board of Immigration Appeals (BIA), contending that the seven-year clock should have begun to run when he first entered the United States. He further noted that, regardless of when the clock began running, as of the time of the BIA decision, handed down on October 27, 1993, he met the seven-year residency requirement. Thus, he argued, his case should be remanded to the IJ for a discretionary § 212(c) hearing. He also argued, for the first time on appeal to the BIA, that the plea agreement was invalid.

The BIA rejected Camacho-Bordes's arguments. The BIA declined to consider the plea agreement argument because it was raised for

---

[1]Under § 212(c), "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to" certain specified grounds for exclusion enumerated in § 212(a) of the INA. 8 U.S.C. § 1182(c) (emphasis added). This provision has been interpreted to also permit the Attorney General to waive the deportation of a lawfully admitted permanent resident in the United States who has maintained a lawful unrelinquished domicile of more than seven consecutive years. See Margalli-Olvera v. INS, 43 F.3d 345, 348 n.1 (8th Cir. 1994).

-4-

the first time on appeal.  The BIA then noted that the seven-year clock begins to run at the time of permanent residence.  Finally, the BIA refused to count the residency time accrued while his appeal was pending towards § 212(c)'s residency requirement, concluding that the appeal was brought solely to delay the proceedings in order to meet the residency requirement.

Camacho-Bordes filed a petition for review in this Court.  Because Camacho-Bordes had been convicted of a drug trafficking offense, however, the filing of a petition for review did not automatically stay the order of deportation.  When Camacho-Bordes sought a temporary stay of deportation, the INS submitted a memorandum in opposition to this motion.  Although a temporary stay was granted, it was subsequently dissolved, and on April 8, 1994, Camacho-Bordes was deported to Mexico.  The INS then sought to have this Court dismiss the appeal for lack of jurisdiction.  This Court agreed, explaining that it could maintain jurisdiction over the appeal of an already-deported alien only if the record reveals a colorable due process claim, which was not present in this case.  See Camacho-Bordes v. INS, 33 F.3d 26, 27-28 (8th Cir. 1994) (interpreting 8 U.S.C. § 1105a(c)).

On March 29, 1994, before this Court had announced its decision in Camacho-Bordes, Camacho-Bordes petitioned the district court for a writ of coram nobis,[2] pursuant to the All Writs Act, 28 U.S.C. § 1651, seeking to have his guilty plea withdrawn and his conviction reversed.  He argued that (1) the government had failed to honor its obligation under the plea agreement to tender a

---

[2]We note that writs of error coram nobis were abolished in civil cases by Federal Rule of Civil Procedure 60(b).  However, in the context of the present case, the motion "is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding."  United States v. Morgan, 346 U.S. 502, 505 n.4 (1954).  Therefore, Rule 60(b) is inapplicable, and Camacho-Bordes may seek coram nobis relief.  See id. at 505-06 n.4.

recommendation against his deportation to the INS, and (2) the plea agreement was voidable because the government's promise was "unfulfillable," having been made to a resident alien who had been a lawful resident in the United States for less than seven years, and who thus would fail to qualify for discretionary relief under INA § 212(c).

The core of Camacho-Bordes's argument was that "Bordes understood that this [plea] agreement would avoid his being deported from the United States as a result of his guilty plea." Mem. at 4 (Mar. 29, 1994). Camacho-Bordes further asserted that he "relied upon and believed the negotiated plea . . . provided protection against his being deported because of this conviction," and that he was "under the impression that it was within the power of the U.S. Attorney's office to effectuate the process by which Bordes could avoid deportation." Id. at 7.

The district court rejected Camacho-Bordes's arguments. The court explained that at the time of the change of plea proceedings in 1985, Camacho-Bordes acknowledged "under oath in open court that he understood . . . the agreement did not guarantee that he would be allowed to remain in the United States." Order at 4 (Aug. 8, 1994). The district court further noted that there was a condition precedent to the government's duty to recommend against Camacho-Bordes's deportation, namely his request of the letter. Because this condition precedent was never fulfilled, the government did not breach the plea agreement. Id. at 5. Finally, the district court noted that Camacho-Bordes "presented no evidence suggesting that the promises to recommend against deportation were unfulfillable." Id. Camacho-Bordes moved for reconsideration of this order, but his motion was denied.

On July 3, 1995, Camacho-Bordes, relying heavily on Margalli

Olvera v. INS, 43 F.3d 345 (8th Cir. 1994),[3] moved the district court[4] to reopen the proceedings for consideration of new evidence and to have his guilty plea withdrawn--essentially, a second petition for a writ of coram nobis. Camacho-Bordes contended that the plea agreement was breached when the INS recommended that this Court not grant Camacho-Bordes's motion for a stay of deportation. Camacho-Bordes further argued that because his breach of plea argument has merit, his appeal to the BIA was not frivolous. Accordingly, the time accrued during the appeal should have counted towards the § 212(c) residency requirement, which Camacho-Bordes would now meet. Finally, Camacho-Bordes renewed his argument that the plea agreement was voidable because it contained an unfulfillable promise when made.

---

[3]In Margalli-Olvera, Margalli-Olvera, a co-defendant of Camacho-Bordes, pled guilty to possessing cocaine. The plea agreement stated, in relevant part, that "the United States will remain silent regarding deportation." Margalli-Olvera, 43 F.3d at 348. At a subsequent hearing concerning Margalli-Olvera's deportability, the INS objected to several pieces of evidence presented by Margalli-Olvera. The IJ concluded that Margalli-Olvera was deportable, and this ruling was upheld by the BIA. Further, the IJ noted that Margalli-Olvera was not eligible for § 212(c) relief, because he did not meet the seven-year residency requirement. Although he would have met this requirement by the time his appeal to the BIA was decided, the BIA held that his appeal was frivolous, and so the time accrued during the pendency of the appeal was not counted.

Margalli-Olvera appealed to this Court. Construing the term "United States" in the plea agreement to include the INS, the Court held that the INS breached the plea agreement by objecting to evidence, rather than remaining silent, at the initial hearing. See id. at 351-54. Thus, Margalli-Olvera's appeal to the BIA, which included this issue, was not frivolous. Because the appeal was not frivolous, the time accrued during the pendency of the appeal to the BIA should have counted for § 212(c) purposes. With this added time, Margalli-Olvera met the residency requirement, and the Court remanded for a § 212(c) hearing. See id. at 356-57.

[4]Although (then) Chief Judge Diana Murphy had ruled on Camacho-Bordes's earlier motions, given her subsequent elevation to the Eighth Circuit, a new district judge was assigned to hear this motion.

The district court granted the motion. The court conclusorily noted that "the government did not act in good faith in denying him the hearing that he was entitled to under Margalli-Olvera, thereby breaching the plea agreement." Mem. & Order at 4 (Nov. 13, 1995). While the district court did not specify why Camacho-Bordes was entitled to a hearing under Margalli-Olvera, we assume that the district court concluded that the plea agreement was void, either because (1) the agreement as entered into was unfulfillable, or (2) the INS was bound by the plea agreement, and it actively breached the agreement when it recommended to this Court that Camacho-Bordes be deported. Given this, the time spent by Camacho-Bordes pursuing his appeal should count for purposes of § 212(c)'s residency requirement, and with this extra time, Camacho-Bordes is eligible for a § 212(c) hearing. The government appeals this ruling.[5]

**II.**

As a threshold matter, the government contends that, given the denial of the first petition for a writ of coram nobis, the second petition for the writ should have been barred under the doctrine of res judicata. We disagree.

There is scant case law on the application of res judicata to a petition for a writ of coram nobis. However, coram nobis relief is "substantially equivalent" to habeas corpus relief,[6] United States v. Little, 608 F.2d 296, 299 (8th Cir. 1979); see also United States v. Morgan, 346 U.S. 502, 506 n.4 (motion for writ of

---

[5]The government's motion to supplement the record on appeal is granted.

[6]Both writs are used to challenge a conviction or sentence, the main difference between the two being that coram nobis relief is available when the defendant is no longer in custody for the applicable conviction, while custody is a prerequisite for habeas relief. See United States v. Little, 608 F.2d 296, 299 & n.5 (8th Cir. 1979), cert. denied, 444 U.S. 1089 (1980).

coram nobis "is of the same general character as one under 28 U.S.C. § 2255"), and it is well settled that, in habeas cases, res judicata is subsumed under the equitable abuse of the writ doctrine, and is therefore inapplicable.  See, e.g., Wong Doo v. United States, 265 U.S. 239, 240-41 (1924) (successive petitions for writ of habeas corpus do not turn on the "inflexible doctrine of res judicata," but rather on whether the successive petition constitutes an abuse of the writ).  We conclude that this principle also applies to coram nobis cases.

Given the recent decision in Margalli-Olvera, supra, and the new evidence supporting Camacho-Bordes's breach of plea argument, the district court did not err in considering the second petition.[7]

### III.

A writ of coram nobis is an "extraordinary remedy," and courts should grant the writ "only under circumstances compelling such action to achieve justice" and to correct errors "of the most fundamental character."  United States v. Morgan, 346 U.S. 502, 511-12 (1954).  Accordingly, a petitioner must show a compelling basis before coram nobis relief will be granted, see Kandiel v. United States, 964 F.2d 794, 797 (8th Cir. 1992), and the movant "must articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis."  Id.  In coram nobis cases, we review the district court's legal conclusions de novo.  See Estate of McKinney v. United States, 71 F.3d 779, 781 (9th Cir. 1995).

Camacho-Bordes advances two arguments in support of his petition for the writ: (1) the plea agreement contained an

---

[7]The government also contends that the arguments raised in the second petition are governed by the law of the case.  In light of the new evidence raised, we conclude that the law of the case doctrine is inapplicable.

unfulfillable promise, and thus it was voidable; and (2) the government breached the plea agreement when the INS argued that Camacho-Bordes be deported.  We address each argument in turn.

**A.**

Camacho-Bordes first argues that his plea should be withdrawn because the government's promise to recommend in writing that he not be deported was an unfulfillable promise.  Camacho-Bordes asks this Court to read the plea agreement as requiring the government to make its recommendation against deportation at a § 212(c) hearing.  Because Camacho-Bordes was not eligible for discretionary relief from deportation under § 212(c) at the time of the plea agreement, he contends that the government's promise was unfulfillable and meaningless.[8]  Plea agreements are "contractual in nature, and are interpreted according to general contract principles." Margalli-Olvera, 43 F.3d at 351.  Issues concerning the interpretation of plea agreements are issues of law which we review de novo.  See id. at 350.

In Santobello v. New York, 404 U.S. 257 (1971), the Supreme Court noted that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Id. at 262. Therefore, the validity of a guilty plea may be impaired where the plea is induced by misrepresentations, including unfulfilled or unfulfillable promises.  See Mabry v.

---

[8]We note that, even if the plea agreement does refer to a written recommendation at a § 212(c) hearing, this promise would not be unfulfillable in perpetuity, but only for that time period before which Camacho-Bordes met § 212(c)'s seven-year residency requirement.  Whether a promise that can only be fulfilled at some future (and possibly, in the event of an intervening deportation, too-late) date should be termed an unfulfillable promise presents an interesting question.  However, we have no need of answering this question because we conclude that the plea agreement was not contingent on a § 212(c) hearing.  See infra.

-10-

Johnson, 467 U.S. 504, 509 (1984) (quoting Brady v. United States, 397 U.S. 742, 755 (1970)).

The plea agreement does not state that the recommendation will be used specifically at a § 212(c) hearing.  Indeed, the writing of the recommendation letter is not tied to any specific hearing.  The agreement merely states that when Camacho-Bordes requests a letter of recommendation, the government is obligated to write it.  In the absence of any temporally-limiting language, we assume that the government's potential duty arose as soon as the agreement was entered into.[9]

Further, we will not infer that the parties intended the recommendation to be used at a § 212(c) hearing.  A § 212(c) hearing is not the only vehicle available to the INS to derail a deportation--the INS has discretion to avoid deporting someone at other stages of the proceedings as well.  For example, the INS district director has prosecutorial discretion in deciding whether or not to institute deportation proceedings. See Johns v. Department of Justice, 653 F.2d 884, 889 (5th Cir. 1981) (the Attorney General "has discretion to refrain from instituting [deportation] proceedings even though grounds for their commencement may exist"); see also Cabasug v. INS, 847 F.2d 1321, 1324 (9th Cir. 1988).  Further, Camacho-Bordes could have sought cancellation of the deportation proceedings as improvidently begun, pursuant to 8 C.F.R. § 242.7.  See Lopez-Telles v. INS, 564 F.2d 1302, 1304 (9th Cir. 1977); Matter of Wong, 13 I. & N. Dec. 701, 703 (1971) ("enforcement officials of the Immigration and

_____

[9]Camacho-Bordes does not argue that a § 212(c) limitation was intended to be part of the agreement but was inadvertently left out of the final recitation.  The district court asked Camacho-Bordes, after reciting the plea agreement, whether the agreement as stated left out any terms that he thought were part of the agreement, and whether he was promised anything left out of the agreement.  To both questions he answered, "No."  Tr. at 6.  The letter of recommendation was not explicitly tied to a § 212(c) hearing.

-11-

Naturalization Service, <u>as a matter of prosecutive judgment</u>, may move . . . for a termination of deportation proceedings as improvidently begun") (emphasis added).

There are several points in the deportation process that the letter from the United States Attorney's Office could have assisted Camacho-Bordes in his efforts to legally remain in this country. Given this, there is no basis for implying that the parties intended the letter to be used only at a § 212(c) hearing.

The only promise made by the government was that, upon request by Camacho-Bordes, it would draft a written recommendation against his deportation. There is no doubt that this promise was fulfillable. That Camacho-Bordes chose to not request a letter of recommendation is not the government's fault, and we will not vacate the guilty plea on this ground.

**B.**

Camacho-Bordes next contends that he understood that, by entering the plea agreement, he would not be deported. This would be an unfulfillable promise, because the United States Attorney's Office cannot dictate the outcome of a deportation proceeding. Therefore, if the government did in fact make this promise, it would cast doubt on the validity of the plea.

However, the record is clear that no such promise was made by the government. The government explicitly promised to recommend against deportation to the INS. No more was promised; no outcome was assured. Camacho-Bordes himself admitted that he received no promises other than the writing of the letter in exchange for his plea. Tr. at 6. Given the colloquy between the district court and Camacho-Bordes, at which Camacho-Bordes stated that he understood that he could still be deported despite the plea agreement, it is clear that this argument has no merit.

## C.

Finally, Camacho-Bordes contends that the government breached the plea agreement when the INS recommended to this Court that Camacho-Bordes be deported. The district court agreed, noting that the government "did not act in good faith" in breaching its plea agreement and denying him a § 212(c) hearing.

Only if the term "Government" in the plea agreement includes the INS does Camacho-Bordes have a winning argument, for it is only the INS that took any action adverse to Camacho-Bordes. It would certainly not be in good faith to offer a written recommendation against deportation and then write a memorandum supporting deportation. The district court apparently assumed that the plea agreement's reference to "Government" does include the INS, and it thereby concluded that the government acted in bad faith.

We disagree. The plea agreement did not purport to bind the INS, nor did it bind any government entity other than the United States Attorney's Office. In Margalli-Olvera, supra, the panel in that case, in construing the "United States" to include the INS, specifically distinguished that conclusion from the facts here in Camacho-Bordes. As the Margalli-Olvera Court noted,

> Camacho-Bordes merely stands for the unremarkable proposition that a plea agreement that by its own explicit terms applies only to the United States Attorney's Office does not bind the INS. . . . The unambiguous terms of the Camacho-Bordes plea agreement specifically obligated the United States Attorney's Office to recommend to the INS that Camacho-Bordes not be deported. . . . The obligation in Camacho-Bordes involves intragovernmental communication between two unambiguously identified agencies.

Margalli-Olvera, 43 F.3d at 351. We agree with this analysis. The plea agreement states that "the Government agrees . . . to make a written recommendation against deportation to the INS." Tr. at 3.

-13-

The "Government" and the "INS" are set up as two different entities, strongly suggesting that the "Government" does not include the INS.

Further, during the taking of the plea, the district court noted that "[a]lthough presumably the INS will consider carefully what the U.S. Attorney says, it doesn't have to do what the U.S. Attorney recommends." Tr. at 7. There is a distinction drawn between who is doing the recommending--the U.S. Attorney--and who is doing the considering--the INS. Because the INS is free to reject the "Government's" recommendation, construing the plea agreement to bind the INS would make no sense. Because the plea agreement does not bind the INS, there was no bad faith exhibited by the INS's recommendation of deportation.

## IV.

We conclude that Camacho-Bordes is not entitled to withdraw his plea, because the plea agreement did not contain an unfulfillable promise, nor was it breached by the United States Attorney's Office. Further, because the agreement was not breached, Camacho-Bordes is not entitled to a § 212(c) hearing. For the reasons stated above, the decision of the district court is reversed.

LAY, dissenting.

In 1985, Carlos Camacho-Bordes entered a guilty plea to a drug trafficking offense pursuant to a plea agreement. The district court, the Honorable Paul A. Magnuson, presiding, granted Camacho-Bordes's motion to withdraw his guilty plea, finding that the government failed to fulfill its plea agreement and exhibited bad faith by deporting Camacho-Bordes without giving him the opportunity to present the government's recommendation against deportation. I find no error in the district court's analysis.

The record shows that Camacho-Bordes's sole purpose in entering into the plea bargain with the government was to ameliorate the negative immigration consequences that would flow from his conviction, including the burdens that deportation would place on his U.S. citizen spouse and their four U.S. citizen children. The plea bargain was induced by the government's promise to recommend against deportation upon his request.[1]

In the context of this case, the government, at least in my judgment and the judgment of the district court, has attempted to play fast and loose with the petitioner. It is true, as the majority finds, that the plea agreement did not expressly provide that the government's recommendation was to be made at a § 212(c) hearing for discretionary relief from an order of deportation, see 8 U.S.C. § 1182(c), but the plea agreement and the colloquy reflect the parties' clear intent that Camacho-Bordes would have a meaningful opportunity to present the government's recommendation to the INS against his deportation. In his deportation proceedings, Camacho-Bordes conceded deportability,[2] but sought § 212(c) relief. At that time, discretionary relief under § 212(c) provided the only procedure by which he could obtain relief from

---

[1] The plea agreement, which was presented orally in the district court, provided that "the Government agrees, if requested by Mr. Bordes, to make a written recommendation against deportation to the INS." In taking the plea from Camacho-Bordes, the district court, the Honorable Diana Murphy, said, "Part of this agreement is that if you want -- and I'm sure that you may well want the Government to follow up on this -- but that the Government would write a letter recommending that you not be deported." Judge Murphy explained that "presumably the INS will consider carefully what the U.S. Attorney says, [although] it doesn't have to do what the U.S. Attorney recommends."

[2] Camacho-Bordes was without question deportable under the immigration laws and thus rightfully conceded deportability. See Immigration and Nationality Act, § 241(a)(11), 8 U.S.C. § 1251(a)(11) (1988) (providing for the deportation of any alien convicted of certain drug offenses) (now codified as amended at 8 U.S.C. § 1251(a)(2)(B)(i)).

deportation.

The government's reliance on the INS's ability to stop the deportation proceedings in the exercise of prosecutorial discretion is misplaced. The INS's prosecutorial discretion "is akin to [the Attorney General's] responsibility for enforcing the criminal laws[.]" See Johns v. Department of Justice, 653 F.2d 884, 889 (5th Cir. 1981). Appealing to the prosecutorial discretion of the Attorney General is not a procedure: there is no notice, no opportunity to be heard, no record of decision, and no requirement of informed decision-making in the exercise of that discretion. The government's recommendation was not intended to be given to the INS in such an informal and wholly discretionary context.

Although there is no showing that the U.S. Attorney prosecuting Camacho-Bordes actually knew that he would be ineligible for § 212(c) relief, the prevailing law in 1985 was sufficiently well-settled that the U.S. Attorney should have known that Camacho-Bordes would be ineligible for § 212(c) relief until November 13, 1990--seven years after he became a lawful permanent resident on the basis of his marriage to a U.S. citizen.[3] Neither

---

[3]As the Board of Immigration Appeals ("BIA") found in response to Camacho-Bordes's argument that the seven-year time period under § 212(c) should have commenced on his first lawful visit to the United States in 1979:

> We have consistently held that the acquisition of lawful domicile time for purposes of eligibility under section 212(c) of the Act must be subsequent to the date of admission as a lawful permanent resident. Matter of Kim, 17 I&N Dec. 144 (BIA 1979); Matter of Newton, 17 I&N Dec. 133 (BIA 1979); Matter of Anwo, 16 I&N Dec. 293 (BIA 1977), aff'd Anwo v. INS, 607 F.2d 435 (D.C. Cir. 1979); Matter of S-, 5 I&N Dec. 516 (BIA 1953); see also Chiravacharadhikul v. INS, 645 F.2d 248 (4th Cir. 1981), cert. denied, 454 U.S. 893 (1981); Castillo-Felix v. INS, 601 F.2d 459 (9th Cir. 1979).

See Def. Ex. K.

the prosecutor nor the court nor defense counsel, however, informed Camacho-Bordes that under existing law in 1985, he would not be eligible for discretionary relief from an order of deportation unless the order occurred after November 13, 1990.[4]  In such circumstances, the government's promise was illusory and constituted a false inducement for Camacho-Bordes to enter his guilty plea.

In Mabry v. Johnson, 467 U.S. 504 (1984), the Supreme Court explained:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes)."

Id. at 509 (quoting Brady v. United States, 397 U.S. 742, 755 (1970) (internal quotation omitted)) (alteration in original and emphasis added). "[O]nly when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause."  Id. Given the development that he was not eligible for discretionary relief under § 212(c), without which he had no opportunity for a hearing to develop an administrative record demonstrating equitable factors in his favor, it is clear that he was not fully and fairly apprised of the illusory nature of the government's promise to make a written

---

[4]After Camacho-Bordes entered his guilty plea, Congress amended § 242 of the Immigration and Nationality Act to provide that "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of conviction."  See Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 701, 100 Stat. 3359, 3445 (1986) (codified at 8 U.S.C. § 1252(i)).

recommendation to the INS against his deportation.

Like the district court, I also find that the government exhibited bad faith by allowing the deportation of Camacho-Bordes that mooted his appeal seeking a § 212(c) hearing. Camacho-Bordes sought a stay of his deportation to allow this court to hear his appeal from the order of deportation. The Department of Justice, representing the INS, opposed his motion for a stay, and later moved successfully to dissolve the stay. The Department of Justice was fully aware that if the stay was dissolved, the INS intended to deport Camacho-Bordes and thereby moot his appeal. In my judgment, it was incumbent upon both the Department of Justice and the U.S. Attorney (i.e., "the government") to attempt to preserve an opportunity for Camacho-Bordes to present the government's recommendation against deportation. See Camacho-Bordes v. INS, 33 F.3d 26, 27 (8th Cir. 1994) (referring to the INS, represented by the Department of Justice, as "the government").

Under Fed. R. Crim. P. 32(d), a defendant may only withdraw a guilty plea after the imposition of his sentence if the plea is the product of "'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of a fair procedure.'" Fed R. Crim. P. 32 advisory committee's note (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Camacho-Bordes's sole purpose in entering the plea bargain was to lessen the chance of his deportation. He entered that plea bargain based on an illusory promise by the government to make a meaningful recommendation against deportation. In doing so, he was deprived of his fundamental right to contest his guilt and thereby contest the government's right of deportation. This is a miscarriage of justice. Accordingly, I would affirm the district court's judgment allowing Camacho-Bordes to withdraw his guilty plea.

A true copy.

   Attest:

       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.