UNITED STATES of America, Plaintiff,

v.

Darwin G. RICE, Defendant.

No. 4:04–CR–00139.

United States District Court, S.D. Iowa.

Aug. 2, 2005.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, for USA, Plaintiff.

Alfredo G. Parrish, Parrish Kruidenier Moss Dunn, Boles Gribble & Cook LLP, B. John Burns, III, Federal Public Defender; Des Moines, IA, Curt N. Daniels, Chariton, IA, for Darwin G. Rice (1), Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

### I. INTRODUCTION

Before the Court is Defendant Darwin G. Rice's Motion to Vacate and Set Aside Jury Verdict and Request for Hearing in Nature of Coram Nobis (Clerk's No. 69).[1] In his motion, the Defendant requests that the Court issue the common law writ of

---

1. The Government does not object to the timeliness of the Defendant's motion. *See United States v. Mills,* 430 F.2d 526, 528 (8th Cir.1970) (joining a minority of Courts of Appeals which have treated the writ of error coram nobis as "a step in the criminal case," and subject to the ten-day appeals period erected in Federal Rule of Appellate Procedure 4(b)). Nevertheless, the Court accepts

coram nobis which, in effect, would vacate the jury verdict reached in this case and allow a new trial on the grounds that the Defendant, at trial, was served by ineffective counsel.

On October 6, 2004, the Defendant was found guilty by jury verdict of one count of making a false statement of material fact to the Farm Service Agency ("FSA"), in violation of 18 U.S.C. § 1001, and one count of removing, disposing, or converting to his own use property mortgaged or pledged to the Secretary of Agriculture, through the FSA, in violation of 18 U.S.C. § 658. At the end of the Government's case-in-chief and again at the close of evidence, the Court denied the Defendant's motion for a judgment of acquittal made under Federal Rule of Criminal Procedure 29. On November 30, 2004, the Court filed an Order (Clerk's No. 57) denying the Defendant's Motion for New Trial (Clerk's No. 54) made under Federal Rule of Criminal Procedure 33. Sentencing was originally set for January 14, 2005.

On January 7, 2005, present counsel for the Defendant filed his Notice of Appearance (Clerks' No. 60).[2] Sentencing was continued in light of appearance of new counsel, scheduling conflicts, and the Court's consideration of the present motion. A hearing on the present motion was held on July 5, 2005. At hearing, counsel for both parties presented oral argument and were given an opportunity to present evidence on the question of ineffective assistance of Defendant's trial counsel. The Court allowed supplemental briefing on the effect the recent Supreme Court's decision in *Andersen v. United States,* —— U.S. ——, 125 S.Ct. 2129, 161 L.Ed.2d

1008 (2005), might have on the present case, which the parties have done. *See* Clerk's Nos. 79, 82. The matter is fully submitted. Sentencing is presently scheduled for August 19, 2005.

## II. ANALYSIS

### A. *Writ of Coram Nobis*

1. *The writ as post-verdict, but pre-judgment relief.*

■ The first issue that must be addressed is whether the writ of coram nobis is available in a criminal case post-verdict, but pre-judgment. The modern-day recognition of the common law writ of coram nobis (or writ of error coram nobis), which allows a trial court to properly exercise its jurisdiction in a criminal setting, occurred in *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). The Court found the authority for the writ in the all-writs section of the Judicial Code, 28 U.S.C. § 1651(a), which allows all courts "established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* at 506–507, 74 S.Ct. 247. The petition is appropriately heard by the district court in which the conviction was obtained. *Id.* at 512, 74 S.Ct. 247. The jurisdiction provided by the writ is necessarily of limited scope. *Id.* at 509 n. 15, 74 S.Ct. 247. It provides the power to a district court to vacate its judgments for errors of fact, where there are errors of the most fundamental character, so as to render "the proceeding itself irregular or invalid." *Id.* "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed

the Defendant's motion as timely and the present order should also be construed as the grant of additional time outside the ten-day period to file the motion.

**2.** On January 21, 2004, trial counsel for the Defendant entered an Unresisted Motion to Withdraw as Counsel (Clerk's No. 66), which was granted by Order (Clerk's No. 67) of Chief United States Magistrate Judge Ross A. Walters.

through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Id.* at 511, 74 S.Ct. 247.

In *Morgan,* the Court affirmed the use of the writ because the record was not clear regarding the defendant's waiver of counsel. Interestingly, the *Morgan* Court did not require evidence or proof that the trial judge did not have knowledge of the error. *Id.* at 511–12, 74 S.Ct. 247. The Court considered that absent any record on the subject of waiver, a hearing on the alleged constitutional violation was proper. *See id.* at 512, 74 S.Ct. 247 ("Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then applicable and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court.")

Like the circumstances in *Morgan,* most Eighth Circuit coram nobis case law deals with post-judgment challenges brought by defendants. *See, e.g., United States v. Little,* 608 F.2d 296, 299 n. 5 (8th Cir.1979) (listings the types of situations in which the writ is proper: "Coram nobis lies only where the petitioner has completed his sentence and is no longer in federal custody, *Gajewski v. United States,* 368 F.2d 533 (8th Cir.1966), is serving a sentence for a subsequent state conviction, *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Azzone v. United States,* 341 F.2d 417 (8th Cir.1965), or has not begun serving the federal sentence under attack, *Thomas v. United States,* 271 F.2d 500 (D.C.Cir.1959)"); *see also Custis v. United States,* 511 U.S. 485, 512 n. 7, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (stating that the writ of coram nobis is available, in the proper circumstances, to challenge a prior conviction relied upon at

sentencing to enhance that sentence) (Souter, J., dissenting). "[T]he ... [coram nobis] motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding." *United States v. Camacho–Bordes,* 94 F.3d 1168, 1171 n. 2 (8th Cir.1996). In order to make the writ available: 1) "the petitioner must show a compelling basis" and 2) "the movant must articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis." *Id.* at 1173. A third element that appears in many cases, and is assumed in others, requires the defendant to show he presently suffers adverse legal consequences which stem from the conviction he is challenging. *See, e.g., Hunter v. United States,* 317 F.Supp.2d 1147, 1148 (D.N.D. 2004).

The defendant in *Camacho–Bordes,* while serving his sentence, was made subject to Immigration and Naturalization Service ("INS") deportation proceedings. He filed his motion on the grounds that the United States Attorney made a false promise in the plea agreement when he promised the defendant would not be deported. The district court found that, while the defendant was informed such a promise cannot be made by a government attorney, the government breached the plea agreement when it, through the INS, actively sought the defendant's deportation. *Id.* at 1174. The Court of Appeals reversed on the grounds that the plea agreement bound only the United States Attorney's Office, not the INS.

In *United States v. Noske,* 235 F.3d 405 (8th Cir.2000), the Court of Appeals affirmed the district court's determination that when an individual is in custody following the judgment under attack, 28 U.S.C. § 2255 is controlling and coram nobis relief, therefore, is unavailable.[3]

---

**3.** In this case, the Defendant has been re- leased on bond pending his sentencing hear-

The Court of Appeals also denied coram nobis relief because it concluded the defendant did not show that an error of the most fundamental character had occurred. The defendant had sought relief based on a reduction in sentence given to her brother in a § 2255 action which she, herself, was refused.

The most compelling Eighth Circuit case, for the purposes of the present case, comes from the Eastern District of Missouri in *United States v. Slay*, 673 F.Supp. 336 (E.D.Mo.1987). Unlike classic coram nobis cases, which occur post-judgment and, most often, post-service of sentence, *Slay* concerns a district court's decision to postpone sentencing in order to consider the defendants' motion coram nobis in light of a Supreme Court ruling regarding the merits of the case, which was handed down immediately following trial and before judgment was entered. *Id.* at 340. Based on the new Supreme Court case regarding the merits, the district court set aside the guilty verdicts, but ordered a new trial on a remaining offense that did not require dismissal under the new law. *Id.*

As in the present case, the government in *Slay* argued that the defendants must use the appellate process to challenge the jury's guilty verdicts. *Id.* Because defendant Slay's co-defendants had filed timely Rules 29(c), 33 and post-trial 12(b)(2) motions, however, the district court decided to join Slay to those motions as it indicated it would do in pre-trial conferences. *Id.* at 344. Nevertheless, the district court went on to disagree with the government regarding the coram nobis motion before it, and added that "to the extent Rules 12(b)(2), 29(c), and 33 are unavailable to these defendants, the Court concludes that error coram nobis relief does lie." *Id.* The district court reasoned that if it did not grant "defendants relief under the Federal Rules of Criminal Procedure, then the Court would be forced to sentence defendants, and possibly incarcerate them,[4] even though the Court believes that the jury's guilty verdicts were infirm." *Id.* The district court went on: "In this circumstance, the Court believes that the availability of the appeal is not an adequate remedy and that error coram nobis relief would lie. Therefore, to the extent the Court does

---

ing. Without deciding whether the bond requirements set in this case satisfy the "in custody" standard to provide standing for habeas relief under 28 U.S.C. § 2241(c), it should be noted that, if the Defendant were in federal custody pending sentencing, a petition seeking coram nobis would still be a proper vehicle for seeking relief, as well as the more conventional habeas petition. *See Russell v. City Pierre, State of S.D.*, 530 F.2d 791, 792 (8th Cir.1976) (stating that in order for the "in custody" requirement of § 2241(c) to be met, "there must be a significant restraint imposed on one's liberty"). The key to coram nobis standing is that a person requesting such relief not be in custody under the conviction or sentence attacked at the time of filing the petition.

4. Profs. King and Klein point out that the "Supreme Court has expressly recognized, in a different but not dissimilar context, 'the

obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.' " *See* 3 Charles Alan White, Nancy J. King, & Susan R. Klein, *Federal Practice and Procedure* § 592 (3d ed.2004) (citing *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). "Coram nobis is available to challenge a conviction in order to remove these consequences." White, *Federal Practice*, § 592; *see Kyle v. United States*, 288 F.2d 440 (2d Cir.1961) (granting writ hearing in interests because right to vote is a substantial civil right); *Korematsu v. United States*, 584 F.Supp. 1406 (1984) (holding that American citizen of Japanese ancestry was entitled to coram nobis writ to vacate his conviction for being in a place from which persons of Japanese ancestry were forbidden in order to remedy collateral consequences defendant believed he suffered as a result of his 1942 conviction).

not have jurisdiction under the Federal Rules of Criminal Procedure to set aside the jury's guilty verdicts and to dismiss the indictment, the Court proceeds by way of error coram nobis." *Id.; see also Lipscomb v. United States,* 273 F.2d 860, 865 (8th Cir.1960) ("The writ of error coram nobis will not lie where there is another adequate remedy, as by motion for new trial or in arrest of judgment, appeal, or motion to recall the remittitur. It cannot serve the purpose of an appeal and, conversely, where the question sought to be litigated could be raised on appeal, the writ will not lie. Its function, primarily at least, is for the correction of an error of fact not apparent on the record and which, if known to the court, would have prevented the entry of judgment.") (internal citations omitted).

This Court agrees with the *Slay* court's analysis about the role coram nobis can play before a final judgment is issued in a criminal case. Without the writ and the relief it supplies, a sentencing court would be forced to sentence a defendant even, in those rare instances, when grave constitutional questions about the trial have come to light. In the post-verdict, but pre-judgment circumstance, a defendant may find that the normal routes under Rules 29 and 33 to challenge a verdict have been exhausted, and the post-judgment opportunities for redress are available only on appeal or through a habeas motion. The writ of coram nobis provides a remedy for those few instances in the criminal process in which a defendant's rights may be at jeopardy without opportunity for recourse. In effect, the writ provides a criminal defendant a remedy when there is nowhere else to turn. Accordingly, the Court finds that the writ may be available in post-verdict, but pre-judgment circumstances, provided a defendant is able to meet the requirements for relief.

2. *Requirements for coram nobis relief.*

■ Again, in order to obtain relief through the writ of coram nobis, the Defendant must: 1) show a compelling basis for the relief; 2) articulate the fundamental errors and compelling circumstances for relief in the application for coram nobis; and 3) show he presently suffers adverse consequences which stem from the conviction. *Camacho–Bordes,* 94 F.3d at 1171 n. 2; *Hunter,* 317 F.Supp.2d at 1148. The first requirement, in this case, has been met because the Defendant has shown he has exhausted the normal routes for relief through Rules 29 and 33. As well, Defendant has shown he is unable to pursue post-judgment relief on direct appeal or by a collateral attack on his sentence pursuant to 28 U.S.C. § 2255. The third requirement is also met because the Defendant faces a final judgment on his criminal conviction, which may, along with the stigmatic effects of being finally judged a felon, and subject the defendant to a term of imprisonment. The crucial requirement in this case is the second requirement, that is, whether the Defendant has articulated fundamental errors and circumstances for relief. The sole ground for relief is the Defendant's claim that his Sixth Amendment right to counsel was violated by the ineffective assistance of his lawyer at trial. The Defendant enumerated several instances during the course of the trial that, he alleges, clearly indicate trial counsel's ineffectiveness. Other Courts of Appeals have determined that a violation of the Sixth Amendment right to counsel is of such fundamental magnitude that it is a ground for coram nobis relief. *See, e.g., United States v. Kwan,* 407 F.3d 1005, 1014–1015 (9th Cir. 2005); *United States v. Esogbue,* 357 F.3d 532, 534–535 (5th Cir.2004). While not stating as such, the Eighth Circuit Court of Appeals, nevertheless, treats coram no-

bis motions as "substantially equivalent" to habeas relief. *Camacho–Bordes*, 94 F.3d at 1172–1173; *see also Larson v. United States*, No. Cr. 4–83–84(1), 2003 WL 721515 at *2–3 (D.Minn. Feb. 26, 2003) (unreported case) (considering ineffective assistance of counsel, if shown, to be sufficient to compel such action as necessary to achieve justice under writ of error coram nobis). Accordingly, this Court will also treat, as it would in a habeas case, ineffective assistance of counsel as a ground for relief for the purpose of determining whether to issue a writ of coram nobis.

### B. *Ineffective Assistance of Counsel*

The Defendant relies on the trial transcript and the Defendant's testimony at the July 5, 2005, hearing to support his claim of ineffective assistance. The standard for reviewing ineffective assistance of counsel claims was set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To prevail on such a claim the Defendant must show that his counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on to produce a just result." *United States v. Williams*, 897 F.2d 1430, 1434 (8th Cir.1990) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052). First, the Defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Montanye v. United States*, 77 F.3d 226, 230 (8th Cir.1996) ("This is a hard sell; our confidence is not easily undermined. We presume attorneys provide effective assistance, and refuse to second-guess strategic decisions or exploit the benefits of hindsight.").

As to the first prong, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. A court must:

> determine whether, in light of all the circumstances, the identified acts or omissions [articulated by the Defendant] were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Id.* at 690, 104 S.Ct. 2052. The Defendant has set forth several acts or omissions allegedly committed by trial counsel which, the Defendant argues, show that the fundamental constitutional right to be represented by counsel was violated.

### 1. *Failure to call Defendant's previous attorney as a witness.*

■ At the July 5, 2005, hearing, the Defendant offered testimony that his trial attorney did not call as a witness the lawyer who advised the Defendant during the FSA loan process. The Defendant argues that this witness would have provided evidence to show that the Defendant was being advised by counsel throughout the loan process and had no intention to defraud the government. The record shows that, notwithstanding trial counsel's notification that the Defendant's previous attorney would be called, trial counsel chose not to put him on the stand. The Defendant testified that he expected the witness would be called and that his trial attorney made no mention that he would not be called until after the close of evidence. Even though this case dealt with seemingly complicated financial matters, the two factual questions presented to the jury were relatively straightforward: 1) did the Defendant knowingly fail to disclose the

sale of soybeans to the FSA before a loan closing; and 2) did the Defendant knowingly withdraw money from a supervised checking account without the permission of an FSA representative?

The Defendant, at hearing, made no proffer about what, precisely, his previous attorney would have testified about, except that the Defendant was represented during the loan process. Without more, the Court cannot consider keeping the Defendant's lawyer off the stand a breach of reasonable trial strategy. For instance, an equally plausible scenario is that the last thing a Defendant may want is a qualified attorney telling the jury that the Defendant knew precisely what he was doing during the loan process and that even, perhaps, he had advised the Defendant to make sure and disclose any material change in his financial condition before the loan closing. The Court simply does not know, without more evidence about Defendant's previous counsel's proposed testimony, that keeping that witness off the stand was not actually good trial strategy. The Defendant also provides no evidence about whether his trial counsel interviewed the witness before trial or the content of that interview. Clearly, it would be unreasonable not to interview this witness before trial to assess whether his testimony would be beneficial to the Defendant. *See Lawson v. Caspari,* 963 F.2d 1094, 1096 (8th Cir.1992) (stating that, once interviewed by trial counsel, whether to call a witness is a matter of trial strategy). However, the Defendant has made no such showing and, therefore, the Court concludes the Defendant has not overcome the presumption that trial counsel did, in fact, act reasonably regarding this witness. To do otherwise would require that the Court engage in speculation and conjecture as to the substance of the lawyer's testimony.

2. *Jury instructions.*

 A substantial amount of the Defendant's objections to his trial counsel's conduct go to trial counsel's failure to adequately represent his interests with regard to jury instructions. A particular focus is trial counsel's failure to request a specific "knowledge" jury instruction. *See* Eighth Cir. Model Jury Crim. Instr. 7.03 (2003) (approving a "knowingly" instruction "where necessary for a fair determination of . . . guilt or innocence"). The Committee on Model Jury Instructions for the Eighth Circuit, however, recommends that this instruction not be used because in most statutes, as in this case, the word "knowingly" does not require proof that the defendant knew he was breaking the law. Indeed, in this case, the Court did include a specific instruction regarding proof of intent or knowledge. *See* Model Jury Crim. Instr. 7.05. The Defendant's reliance on *Andersen* to support inclusion of a specific knowledge instruction is unavailing for no other reason than that *Andersen* was not decided at the time of trial. Even if *Andersen* completely supported the Defendant's position regarding the disputed "knowledge" instruction, it would be unfair to ask trial counsel to predict the Supreme Court's decision. *See Strickland,* 104 S.Ct. at 2066 (stating that trial "counsel's conduct on the facts of the particular case, [should be] viewed as of the time of counsel's conduct").

The Defendant also argues that trial counsel should have requested a "good faith" instruction or an "intent to defraud" instruction. *See* Model Jury Crim. Instr. 9.08. Simply failing to not request these instructions, however, cannot overcome the presumption that trial counsel acted reasonably in so doing. The Defendant offers no evidence that trial counsel did not consider these instructions or that he was ignorant of them, save for the absence of a

request on the record. The Court agrees with the Defendant that if the Court had denied the Defendant's request for these instructions at trial, that would almost certainly have been an error. But that would have been judicial error, not the category of attorney error being analyzed here. The Court finds that it is reasonable that trial counsel, looking over the jury instructions as a whole and considering other alternatives, found them adequate to address his client's interests and provide the jurors sufficient information to make their findings.

3. *Trial counsel's unfamiliarity with the federal criminal rules and trial procedures.*

The Defendant argues that, in general, trial counsel's performance at trial was woefully inadequate. The Defendant points to these specific instances: trial counsel failed to follow the Court's pretrial order to file a proposed witness list, exhibit list, trial brief, or proposed jury instructions; trial counsel failed to follow the Local Rule requiring copies of his exhibits for the Court; trial counsel failed to file a motion in limine or object to evidence that alleged the Defendant was violent or abusive to FSA employees; trial counsel appeared unaware about how to enter exhibits into evidence; trial counsel failed to make appropriate hearsay objections; trial counsel was not sure as to what his own witnesses would testify; trial counsel attempted to introduce evidence from two witnesses who knew nothing about the facts of the case; trial counsel was not familiar with Federal Rule of Criminal Procedure 29 and failed to provide adequate argument to support his Rule 29 motion and renewal; trial counsel appeared to be "boring the jury to death";[5]

trial counsel did not present a relevant defense; and trial counsel did not file a supporting brief for his motion for a new trial as required by the Local Rules. Finally, the Defendant argues that trial counsel did not mount an adequate theory of defense based on the Defendant being advised by counsel throughout the loan process, acting in good faith, and being confused about the legal requirements associated with his loan.

The Government, however, rightly points out: trial exhibits were eventually identified, offered, and submitted; appropriate Rule 29 motions were made and ruled on; Defendant's counsel is not the first to fail to comply with the Local Rules or the Court's own instructions; and, witnesses often surprise even the most well-prepared attorneys on direct examination. As for the motion in limine or objections to allegations of abusive behavior, a significant part of the Defendant's theory of defense was that the Defendant's relationship with the FSA was characterized by a long history of animosity. Given that the Defendant raised that history of animosity, the Court would have been hard pressed to disallow testimony from the FSA about the Defendant's own role in contributing to that animosity.

 As to failing to make appropriate hearsay objections, trial counsel did allow testimony into the record that was harmful to his client. Nevertheless, the Court cannot say the presumption of correctness that trial counsel is afforded can be overcome on the basis of failing to make appropriate hearsay objections. When and where to make such objections certainly is a matter of trial strategy. While not excusing trial counsel's failure in this regard, the Court noticed that the Government's

---

**5.** This is the Court's statement made during a bench conference outside presence of the jury.

attorney, for what can only be assumed were his legitimate reasons, did not make a single hearsay objection at trial even when doing so would have been highly appropriate. Accordingly, the Court cannot find that the Defendant has overcome the presumption that his trial counsel acted reasonably.

■ Notwithstanding this conclusion, the Court will consider trial counsel's performance at trial, for the sake of argument, as sub-standard and allow that Defendant has met his burden as to the first prong under *Strickland.* The Court does not find, however, that even a perfect performance by trial counsel would have likely resulted in an acquittal. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). As this Court has already determined in its order denying a new trial, there was more than substantial evidence to convict the Defendant based on the facts before the jury. The evidence supported the factual conclusion that the Defendant withheld information about the sale of a crop used to secure a federal loan and that the Defendant withdrew monies from a federally supervised checking account without prior approval. Accordingly, the Court finds that "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052.

### III. CONCLUSION

Because the Defendant has not shown, as set forth above, a factual error so fundamental as to make the trial proceeding invalid, the Court declines to issue a writ coram nobis at this time in the proceedings. Accordingly, Defendant's Motion to Vacate and Set Aside Jury Verdict and Request for Hearing in Nature of Coram Nobis (Clerk's No. 69) in DENIED. Sentencing will be held, as scheduled, on August 19, 2005.

IT IS SO ORDERED.