Cite as 2014 Ark. 368

# SUPREME COURT OF ARKANSAS

No. CR-95-1042

| | | |
|---|---|---|
| | | **Opinion Delivered** September 11, 2014 |
| DEANGELO ALLEN | PETITIONER | PRO SE PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS [CRITTENDEN COUNTY CIRCUIT COURT, NO. 18CR-94-1023] |
| V. | | |
| STATE OF ARKANSAS | RESPONDENT | |
| | | PETITION DISMISSED. |

## PER CURIAM

In 1995, petitioner Deangelo Allen[1] was found guilty of capital murder and sentenced to life imprisonment without parole. We affirmed. *Allen v. State*, 324 Ark. 1, 918 S.W.2d 699 (1996). Subsequently, petitioner timely filed in the trial court a pro se petition pursuant to Arkansas Rule of Criminal Procedure 37.1 (1995) seeking to vacate the judgment. The petition was denied, and the order was affirmed. *Allen v. State*, CR-96-881 (Ark. Jan. 7, 1999) (unpublished per curiam).

In 2006, petitioner filed in this court a pro se petition seeking to have jurisdiction reinvested in the trial court to consider a petition for writ of error coram nobis. The petition for leave to proceed in the trial court was necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after

---

[1]Petitioner is also known as D'angelo Allen.

we grant permission. *Dansby v. State*, 343 Ark. 635, 37 S.W.3d 599 (2001). The petition was denied. *Allen v. State*, CR-95-1042 (Ark. Jan. 18, 2007) (unpublished per curiam).

Now before us is petitioner's second petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. A writ of error coram nobis is an extraordinarily rare remedy more known for its denial than its approval. *Cromeans v. State*, 2013 Ark. 273 (per curiam). Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Greene v. State*, 2013 Ark. 251 (per curiam). The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the circuit court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Burks v. State*, 2013 Ark. 188 (per curiam).

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Cromeans*, 2013 Ark. 273. We have held that a writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Wright v. State*, 2014 Ark. 25 (per curiam); *Greene*, 2013 Ark. 251.

In his first coram-nobis petition, petitioner alleged that he was entitled to issuance of the writ on the ground that the State withheld material evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The Supreme Court in *Brady* held that "the suppression

by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In *Strickler v. Greene*, 527 U.S. 263 (1999), the Court revisited *Brady* and declared that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 373 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). In *Strickler*, the court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

The evidence that was alleged in the first petition to have been withheld consisted of a custodial statement to police made by the State's "star witness," Tony McKenzie. McKenzie testified at petitioner's trial that he drove with petitioner, Earnest Phillips, and Quincy Wright to a location in West Memphis where Phillips asked McKenzie to let them out so that he could "sting a fool," or rob someone. McKenzie said that later that evening he saw petitioner, Phillips, and Wright and that, when he picked them up in his car, he noticed that petitioner was perspiring. He said that Phillips later admitted to him that he had killed a man. Another witness, Eric Marshall, testified that petitioner had told him that the he and the other two men had gone to the victim's house where Phillips had shot the victim. Other witnesses testified that the house had been ransacked as though someone was looking for something. Petitioner gave a statement to police that was videotaped and shown to the jury in which he conceded that he

SLIP OPINION

was in the house but contended that he was not aware that Phillips would kill the victim when he went there. This court concluded on direct appeal that there was substantial evidence from which the jury could have found that petitioner aided, or attempted to aid, Phillips and Wright in the commission of capital murder and that he was more than an innocent bystander.

Petitioner asserted in the first petition that McKenzie agreed in exchange for not being charged as an accomplice to capital murder to say that Phillips made the "sting a fool" remark and that petitioner was sweating profusely when he picked the three men up in the vicinity of the victim's house after the crime had been committed. Petitioner appended McKenzie's affidavit to his petition in which McKenzie averred that he agreed to incriminate petitioner in exchange for not being charged as an accomplice, that Phillips did not say that he was going to "sting a fool" before he dropped the three men off, and that petitioner was not sweating when he saw him after the murder had been committed. Petitioner argued that, without the statement, which suggested that he had known a robbery was planned by Phillips and that he was perspiring because he had participated in ransacking the house, there was a reasonable probability that the jury could have found that there was no advance plan to rob the victim and that Phillips shot the victim accidently.

We found no *Brady* violation, noting that McKenzie stated in the affidavit only that he had lied in the statement he made. McKenzie did not contend that he made some other statement that the prosecution hid from the defense at trial. The defense was free to question McKenzie before trial, and McKenzie was subject to cross-examination at trial where defense counsel was free to question him about the veracity of the statement and his motivation for

4

making the statement. Also, petitioner admitted to having been at the house, and witness Eric Marshall testified that petitioner told him that he, Phillips, and Wright had heard that the victim had won some money gambling and that they went to the victim's house and told him that they had car trouble as an apparent ruse to gain entry. Marshall further said that petitioner was shaky and tearful when he related the story. In short, there was other evidence implicating petitioner as an accomplice to the robbery and murder of the victim beyond that adduced from McKenzie. Under these circumstances, we found that petitioner had failed to show that the State withheld information that would have resulted in a different outcome in the proceedings.

In the instant petition, petitioner contends that the State coached Tony McKenzie on what to say and that McKenzie's testimony at trial did not corroborate Earnest Phillips's testimony. Petitioner alleges that, in statements McKenzie made to the police during a custodial interrogation, McKenzie was compelled by the police officers to say that petitioner was sweating profusely. Appended to the petition is the same affidavit that was submitted with the first petition in 2006.

In its response to the petition, the State urges this court to deny relief on the basis that petitioner raised the same claim in his first coram-nobis petition. We have held that we will not exercise our discretion to permit a successive application for the writ if the petitioner is abusing the writ by alleging the same grounds without additional facts sufficient to provide grounds for the writ. *See Burgie v. State*, 2013 Ark. 356 (per curiam); *see also Rodgers v. State*, 2013 Ark. 294 (per curiam) ("[A] court has the discretion to determine whether the renewal of a petitioner's application for the writ, when there are additional facts presented in support of the same

grounds, will be permitted."); *Jackson v. State*, 2010 Ark. 81 (per curiam) (citing *Jackson v. State*, 2009 Ark. 572 (per curiam)); *United States v. Camacho-Bordes*, 94 F.3d 1168 (8th Cir. 1996) (res judicata did not apply to bar a second petition for writ of error coram nobis, but abuse-of-writ doctrine was applied to subsume res judicata).

Here, as stated, McKenzie's affidavit is the same affidavit that was submitted with the first coram-nobis petition in 2006. Even considering the claim that McKenzie was "coached" by the police, petitioner alleges no facts in the petition now before us that are sufficient to distinguish his instant claim of a *Brady* violation from the claim that he advanced in his first petition. He did not establish a basis for issuance of the writ in his first petition, and his reassertion of essentially the same claims in the instant petition is a misuse of the remedy. Petitioner has again failed to show that the State withheld information that would have resulted in a different outcome in the proceedings.[2] Accordingly, the petition is dismissed.

Petition dismissed.

*DeAngelo Allen*, pro se petitioner.

*Dustin McDaniel*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.

---

[2]Many of petitioner's allegations are centered on the sufficiency of the evidence or the credibility of witnesses. Such allegations are not cognizable in coram-nobis proceedings. *Patrick v. State*, 2014 Ark. 15 (per curiam). Those issues are to be settled at trial, and, when appropriate, on the record on direct appeal. *Id.*; *Sims v. State*, 2012 Ark. 458 (per curiam).