OPINION OF THE COURT
FUENTES, Circuit Judge:
Appellant David Noe appeals his judgment of conviction, claiming that the District Court erroneously denied his motions to dismiss the indictment and to suppress evidence and statements. For the reasons discussed below, we will affirm.[1]
I.
Because we write only for the parties, a brief recitation of the facts will suffice. This case originated in a Bureau of Alcohol, Tobacco, Firearms and Explosives (“ATF”) investigation of Noe’s live-in girlfriend, Kimberly Williams. In April 2006, the ATF learned that Williams had pur *806 chased eight firearms within a short period of time. The ATF further determined that Noe, who had a prior felony conviction for unlawful possession of a handgun, was residing at the same address as Williams. Concerned that something unseemly was afoot, the ATF assigned agents Curry and Zubaty to investigate further.
The agents went to the Exxon station where Williams worked as an assistant manager. They explained to Williams that they were investigating her purchase of multiple firearms and requested permission to enter her home to see the firearms and verify that she was still in possession of them. Williams told the agents that she would not consent to them entering her home because it was “too messy,” but instead offered to enter her home on her own, get the firearms, and bring them outside so the agents could perform their check. The agents agreed to Williams’s proposal and allowed her to enter the home unescorted. Williams obtained the weapons, but unexpectedly presented the officers with eleven firearms, not eight. She acknowledged that three of the firearms belonged to Noe, and she permitted the agents to seize the firearms.
Both parties agree with the narrative presented above. The dispute in this case focuses on one comment that may or may not have been made by the agents prior to the seizure. At some point while at the gas station, Williams asked the agents if they had a warrant and Agent Zubaty replied that they did not. Williams testified that Agent Zubaty followed that comment by saying “but we can get one.” Agent Curry, on the other hand, testified that he was “pretty positive” that they did not say they could get a warrant. Zubaty did not testify, and there were no other witnesses to the exchange.
Following the seizure of the firearms, Noe contacted the ATF and attempted to explain the origin of the three extra weapons. Soon thereafter, Noe was charged in the Eastern District of Pennsylvania in an indictment alleging one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Noe moved to dismiss the indictment, arguing that § 922(g)(1) exceeds Congress’s authority under the Commerce Clause, and to suppress evidence and statements, arguing that Williams had not voluntarily consented to the search. The District Court denied both motions.
Noe conditionally pled guilty to the indictment, reserving the right to appeal the District Court’s denial of his pretrial motions. As part of the plea, the Government conceded that Noe only had the guns for “collection” purposes and had not unlawfully used them. On August 1, 2008, the District Court sentenced Noe to five years supervised release and a special assessment of $100. Noe timely appealed.[2]
II.
As an initial matter, Noe challenges the constitutionality of the felon-in-possession statute. 18 U.S.C. § 922(g)(1). He argues that the intrastate possession of a firearm does not have a substantial effect upon interstate commerce and, thus, does not constitute the basis for a valid exercise of congressional authority under the Commerce Clause. We specifically addressed this issue in United States v. Singletary, 268 F.3d 196 (3d Cir.2001), and held that § 922(g)(1) was an appropriate exercise of Congress’s authority under the Commerce *807 Clause. Id. at 205. As we have already decided this issue, we need not revisit it here.
We review the District Court’s denial of a motion to suppress for “clear error as to the underlying facts,” but we exercise “plenary review as to its legality in light of the court’s properly found facts.” United States v. Givan, 320 F.3d 452, 458 (3d Cir.2003) (internal quotation marks omitted). Noe disputes the District Court’s finding that Williams gave voluntary consent to retrieve firearms from her house in order to give them to the ATF agents. “[Wlhether a consent to a search is in fact ‘voluntary’ or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.” Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In making this determination, courts assess both the characteristics of the individual and the details of the encounter, including factors such as the age, intelligence, and educational background of the individual; the length of the encounter; the repeated and prolonged nature of the questioning; the use of, or lack of, threats or physical punishment; and whether the individual was advised of his or her constitutional rights, including the right to refuse to consent. Id. at 226, 93 S.Ct. 2041 (citations omitted); see also United States v. Kim, 27 F.3d 947, 955 (3d Cir.1994). Also relevant are “the setting in which the consent was obtained [and] the parties’ verbal and nonverbal actions.” Givan, 320 F.3d at 459. No one factor is dispositive. Schneckloth, 412 U.S. at 226, 93 S.Ct. 2041. The ultimate question is whether, under all the circumstances, the consent was the free and unconstrained choice of its maker. Id. It is the government’s burden to establish voluntariness by a preponderance of the evidence. United States v. Sebetich, 776 F.2d 412, 424 (3d Cir.1985).
Noe bases his argument primarily on the claim that the ATF agents threatened Williams that they would obtain a search warrant if she refused to consent to the search and seizure of the firearms. As Noe correctly points out, it is well-established that when evidence shows that a person believes she must consent to a search, this “weighs heavily against a finding that consent was voluntarily given.” United States v. Molt, 589 F.2d 1247, 1251 (3d Cir.1978); see Schneckloth, 412 U.S. at 233-34, 93 S.Ct. 2041 (citing Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)). “And when that belief stems directly from misrepresentations made by government agents, however innocently made, we deem the consent even more questionable.” Molt, 589 F.2d at 1251-52 (finding consent involuntary where agents misrepresented their statutory authority). In United States v. Sebetich we expressed concern that statements by law enforcement officers suggesting that acquiring a warrant would be a foregone conclusion might convey an impression that the individual has no choice but to consent.[3] 776 F.2d at 425. Under such circumstances, consent might be vitiated where probable cause to support the issuance of a warrant is, in fact, lacking.[4] See id. at 424.
*808 Noe contends that the District Court failed to make specific findings or even address Williams’s testimony that the ATF agents threatened to secure a warrant if she refused consent and that she believed she had no choice but to go back to the house and get the weapons. Accordingly, he argues that the District Court clearly erred in asserting that there was “nothing in the record of this case to suggest that the consent given by Miss Williams was the product of any coercion, duress or improper tactics by law enforcement.” United States v. Noe, No. 07-CR-11, 2008 WL 4211672, at *6 (E.D.Pa. Sept. 12, 2008). We disagree. We find support in the record that the District Court considered and weighed the contradictory testimony before determining that Williams had voluntarily consented to the seizure. Although we agree with Noe that the District Court might well have been more explicit in its findings of fact, there are no critical unresolved factual issues that prevent us from properly reviewing the District Court’s findings.
The record before us indicates that the District Court acknowledged the testimony of Williams on several occasions. During the argument at the suppression hearing, the District Court expressly stated that it understood Noe’s central argument to concern the voluntariness of Williams’s decision to consent. Similarly, in its Memorandum Opinion, the District Court noted that Noe “alleges that Miss Williams was coerced into retrieving the guns by the ATF agents who told her that they were going to come in the house to verify what she was saying.” Id. at *3. More specifically to the claim raised by Noe, the District Court said, “I must examine the testimony of the witnesses to determine whether valid consent for the seizure of the weapons was given by Miss Williams.” Id. at *5 (emphasis added). The District Court then explained, in detail, its determination that there was “no coercion involved in obtaining this consent.” Id. Importantly, the District Court had noted early in its Memorandum Opinion that, in making factual findings, it considered “the pleadings, the testimony of the witnesses and defense exhibit presented at the hearing” and made “credibility determinations.” Id. at *1. Thus, we can plainly infer that the judge evaluated the testimony of both Williams and Zubaty — the only two witnesses in this case — and then based his decision about Agent Curry’s alleged statement on the credibility of those two witnesses.
Having established that the District Court did, in fact, take William’s testimony into consideration, the core issue in this appeal then becomes whether there is any evidence to support the District Court’s conclusion that Williams’s consent was voluntary. Under the clear error standard, we will uphold the District Court’s factual findings unless they are “completely devoid of minimum evidentiary support displaying some hue of credibility,” or “bear[ ] no rational relationship to the supportive evidentiary data.” United States v. Antoon, 938 F.2d 200, 204 (3d Cir.1991). A trial judge’s factual findings which are based on the credibility of witnesses are entitled to great deference. As the Supreme Court has explained, “when a trial judge’s finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.” Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). See also United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir.1997) (applying the rule in a criminal case). Thus, “[w]here there are *809 two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Anderson, 470 U.S. at 574, 105 S.Ct. 1504 (1985).
We find sufficient support in the record for the District Court’s determination that consent was voluntarily given. Williams was contacted by telephone and informed by a coworker that there were two agents waiting to speak with her in the parking lot at her place of employment. Williams went to meet with the agents on her own accord. When she arrived, the agents were in plain clothes, were properly identified as agents, and had no visible weapons. In an exchange of limited words and duration, Williams declined to allow the agents entry into her home but volunteered to bring the firearms outside for their inspection. She said she needed half an hour to retrieve the firearms and the agents acquiesced, despite concerns for their own safety. At no time did the agents enter the residence.
At the hearing, Williams testified inconsistently about whether she believed she had a choice in retrieving the firearms. In addition, Williams stated affirmatively that she turned over the firearms because she wanted to “cooperate” with the agents, (App.133), and that she told the agents: “[i]f it would make it easier, just take them all,” further indicating the voluntary nature of her consent, (App.130).
Based on our overall review of the record, we cannot say that the District Court committed clear error in finding that Williams gave voluntary consent to the seizure. Accordingly, we will defer to the judgment of the District Court.
III.
For the foregoing reasons, we affirm.

. The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

. Noe subsequently violated the terms of his supervised release while this appeal was pending and was sentenced to jail time.

. We clarified, however, that a statement by an officer that he would merely attempt to obtain a warrant would not weigh against a finding of voluntary consent. Sebetich, 776 F.2d at 425 (citations omitted).

. We have, however, expressly declined to "establish a blanket rule that, whenever police ... falsely claim they can obtain [a search warrant], voluntariness is necessarily vitiated; indeed Schneckloth mandates consideration of all the surrounding circumstances." Sebetich, 776 F.2d at 424. Thus, even if the agents had, indeed, threatened to obtain a warrant, that would constitute but one factor *808 in the overall determination of voluntariness of the consent.