NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――――――

No. 11-2789

―――――――――――

UNITED STATES OF AMERICA

v.

ROGELIO GOMAR-TORRES,

Appellant

―――――――――――

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 1:10-cr-00648-001)
District Judge: Jerome B. Simandale

―――――――――――

Submitted Under Third Circuit LAR 34.1(a)
September 21, 2012

―――――――――――

Before: AMBRO, GREENAWAY JR., and O'MALLEY[*], Circuit Judges.

(Opinion filed: October 9, 2012)

―――――――――――

OPINION

―――――――――――

O'MALLEY, Circuit Judge

―――――――――――

[*] Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal
Circuit, sitting by designation.

Rogelio Gomar-Torres ("Gomar-Torres") pled guilty to one count of possession with intent to distribute five kilograms or more of cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A). The District Court sentenced Gomar-Torres to 120 months of imprisonment, the mandatory minimum for that offense. Gomar-Torres appeals his sentence, arguing that the District Court clearly erred by finding him ineligible for a safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. We perceive no error by the District Court and, accordingly, affirm Gomar-Torres' sentence.[1]

## I. BACKGROUND

Since we write solely for the parties, we recite only the facts necessary to our decision.

On July 27, 2010, Gomar-Torres was pulled over while driving a vehicle in New Jersey. He was accompanied by Roberto Gomez-Polida ("Gomez-Polida"), a Mexican citizen like himself. When both informed the police officer that they were in the United States illegally, they were detained and the officer searched the vehicle, finding thirteen kilograms of cocaine and $305,902 in a hidden compartment. Gomar-Torres admitted that he was going to deliver the money and drugs to another individual. The vehicle was registered to Brian Gonzalez ("Gonzalez"), who also owns the house in which Gomar-Torres and Gomez-Polida shared a room. Police searched the room and found a rifle and 150 rounds of ammunition.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. §§ 1291 and 3742(a).

A Grand Jury sitting in the District of New Jersey charged Gomar-Torres with two counts: possession with intent to distribute five kilograms or more of cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On March 4, 2011, Gomar-Torres pled guilty to the first count.

The District Court sentenced Gomar-Torres on June 24, 2011. At sentencing, the Government opposed Gomar-Torres' request for a sentence below the mandatory minimum, pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 ("the safety valve provisions"). Under these provisions, a district court may depart from the statutory mandatory minimum for an offense when calculating a defendant's sentence if, among other things, the defendant establishes that he or she has "truthfully provided to the Government all information and evidence [he or she] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). The Government argued that Gomar-Torres failed to do so because he withheld information regarding the drug conspiracy that led to his arrest.

The Government presented testimony from the lead case agent on Gomar-Torres' investigation, Special Agent Cristin Hendrickson of the Department of Homeland Security. Homeland Security had been investigating Gomar-Torres for some time prior to his arrest and Special Agent Hendrickson was involved in the investigation from its onset. She also participated in Gomar-Torres' arrest and two of three proffer sessions which followed. During sentencing, Special Agent Hendrickson testified that she believed Gomar-Torres withheld relevant information during these proffer sessions.

3

Special Agent Hendrickson stated that Gomar-Torres lied about a prior incident in which he delivered a suitcase to a mall in Elizabeth, New Jersey.  Gomar-Torres claimed that he was accompanied by Gonzalez on that trip, but Special Agent Hendrickson testified that she witnessed the delivery and a different person, not Gonzalez, was with Gomar-Torres.  Special Agent Herndrickson also stated that, after she confronted Gomar-Torres with his phone records, he admitted to making a call on the night before his arrest.  He stated in a proffer session that he called a man named Jose Chameco ("Chameco"), who Gomar-Torres claimed was in Mexico at the time of the call.  Special Agent Hendrickson testified that this claim was impossible, however, because Chameco was in New Jersey, not Mexico, on that night and, according to his phone records, Gomar-Torres called a Mexican cell phone number.  Special Agent Hendrickson said that, in her experience, she has never seen a Mexican phone work in the United States.  Special Agent Hendrickson believed, accordingly, that Gomar-Torres must have called someone other than Chameco on the night specified.

Special Agent Hendrickson also felt that Gomar-Torres misrepresented Gonzalez's involvement in the drug conspiracy.  Initially, Gomar-Torres denied that Gonzalez had participated in the scheme, but after Special Agent Hendrickson confronted him with information regarding Gonzalez's involvement, he admitted that Gonzalez did take part.

Based on this testimony, the District Court denied Gomar-Torres' request for relief under the safety-valve provisions.  The District Court found that Gomar-Torres withheld relevant information.  The District Court discounted Gomar-Torres' proffer because it found that he had otherwise lied throughout the investigation.  Specifically, the District

4

Court found that Gomar-Torres: (1) was untruthful about Gonzalez's involvement in the drug conspiracy, stating that Gonzalez was not involved even though he was; (2) lied about his relationship with Gomez-Polida, stating that they did not live together although they did; (3) falsely claimed that he was accompanied by Gonzalez on a trip to deliver a suitcase to a person in Elizabeth, New Jersey, even though he was accompanied by someone else; and (4) lied about a call he made on the night before his arrest, falsely stating that he had called Chameco when he in fact called someone else.

Accordingly, the District Court held that Gomar-Torres failed to demonstrate by a preponderance of the evidence that he satisfied the fifth prerequisite for application of the safety valve. That is, Gomar-Torres did not show that he truthfully provided to the Government all information and evidence he had concerning the drug conspiracy in which he was involved.

After denying relief under the safety valve, the District Court proceeded to sentence Gomar-Torres. The District Court calculated a guideline range based on an offense level of twenty-nine and a criminal history category of I, making the range for Gomar-Torres 87 to 108 months of imprisonment. The mandatory minimum, however, was 120 months. Gomar-Torres did not object to the calculation. The District Court recognized that there were no motions for departure other than Gomar-Torres' motion under the safety valve, which the District Court had denied. Finally, the District Court considered the relevant factors under 18 U.S.C. § 3553(a), stating that, because Gomar-Torres had been untruthful and had been in possession of a firearm, the Court was tempted to depart upward even further than required by the applicable mandatory

5

minimum. Ultimately, however, the District Court sentenced Gomar-Torres to the mandatory minimum of 120 months of imprisonment.

Gomar-Torres appealed his sentence to this Court on June 28, 2011.

## II. DISCUSSION

We exercise plenary review over the District Court's application of the safety valve. See United States v. Wilson, 106 F.3d 1140, 1143 (3d Cir. 1997). But we review the District Court's underlying factual determinations, such as the finding that Gomar-Torres withheld relevant information from the Government, for clear error. See United States v. Sabir, 117 F.3d 750, 752 (3d Cir. 1997). Credibility determinations, such as those made by the District Court regarding Gomar-Torres and Special Agent Hendrickson, are almost never clear error. United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997) ("[W]hen the district court's [determination about the credibility of a witness] is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error.").

18 U.S.C. § 3553(f)(5) permits a district court to impose a sentence below a statutory mandatory minimum if it finds that the defendant satisfies five criteria, including that:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the

6

> information shall not preclude a determination by the court
> that the defendant has complied with this requirement.

The defendant bears the burden of showing, by a preponderance of the evidence, that a safety valve reduction applies. See Sabir, 117 F.3d at 754.

The District Court found that Gomar-Torres withheld relevant information from the Government regarding the drug scheme in which he was involved and, thus, Gomar-Torres failed to meet his burden of showing that he satisfied the fifth criteria for application of the safety valve. That finding was not clearly erroneous. It was amply supported by the record and was based in large part on credibility determinations both as to the statements of Gomar-Torres and the testimony of Special Agent Hendrickson.

Gomar-Torres claimed to the District Court that he gave the Government all relevant information within his knowledge and that all the information he provided was truthful. But he offered no sworn testimony to support this assertion. The District Court discredited Gomar-Torres' claims because he had been untruthful throughout the case. As noted above, on several different occasions Gomar-Torres had changed his statements when confronted with information that proved him wrong. The District Court had extensive support for its credibility determination regarding Gomar-Torres' claims; we will not disturb them.

The District Court based most of its factual findings on the testimony of Special Agent Hendrickson, indicating that it found her testimony credible. The District Court agreed with Special Agent Hendrickson that, despite Gomar-Torres' statements to the contrary, Gomar-Torres was not accompanied by Gonzalez when he delivered a suitcase

7

to a mall in Elizabeth, New Jersey. The District Court also found that, as Special Agent Hendrickson testified, Gomar-Torres called someone other than Chameco on the night before his arrest. The District Court's credibility determinations regarding Special Agent Hendrickson's testimony are also not clearly erroneous. They were based on her coherent and plausible testimony, which was subject to cross-examination, not internally inconsistent, and not contradicted by external evidence. See Igbonwa, 120 F.3d at 441 (3d Cir. 1997).

Gomar-Torres argues that Special Agent Hendrickson's testimony is unverifiable because it is based on hearsay. Appellant's Amended Brief at 6. We disagree. The testimony on which the District Court relied was a first-hand account by Special Agent Hendrickson. To the extent that some of her beliefs were based on information given to her by third parties, Gomar-Torres acknowledges that hearsay testimony may be considered in sentencing proceedings if it is reliable. See United States v. Robinson, 482 F.3d 244, 246 (3d Cir. 2007) ("[T]he Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing," but "hearsay statements must have some minimal indicium of reliability beyond mere allegation.") (internal quotations marks omitted). The District Court committed no error on this point. In fact, the District Court refused to rely on certain testimony by Special Agent Hendrickson that was based on information from sources which, because they were involved in an ongoing investigation, remained undisclosed. J.A. at 112a ("I'm not considering other information because it wasn't backed up by reliable basis.").

8

The District Court's factual finding that Gomar-Torres failed to provide the Government all information he had related to the drug scheme in which he was involved was not clearly erroneous.  Accordingly, the Court correctly found that Gomar-Torres was ineligible for application of the safety valve and receipt of the benefits flowing therefrom.

## III. CONCLUSION

For the foregoing reasons, we affirm Gomar-Torres' sentence.