**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3678
_____

HAKIM ALI BRYANT,
                                    Appellant

v.

CITY OF PHILADELPHIA;
CITY OF PHILADELPHIA POLICE OFFICER HOOVER  #9215;
POLICE OFFICER JOSEPH COONEY;
POLICE OFFICER MANUS CASSIDY;
POLICE OFFICER INOCENCIO AMARO;
POLICE OFFICER CYPRIAN SCOTT;
POLICE OFFICER SEAN LEATHERBURY;
POLICE OFFICER ERIK BULLOCK;
POLICE OFFICER TODD LEWIS;
POLICE OFFICER WILLIAM MCDONALD;
POLICE OFFICER ROBERT DIBIASIO;
SGT. JOSEPH MCDONALD;
SGT. AUSTIN FRASER

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-06111)
District Judge:  Honorable Eduardo C. Robreno

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 5, 2013
Before:  AMBRO, HARDIMAN and ROTH, Circuit Judges

(Opinion filed: March 15, 2013)

_____

OPINION

_____

PER CURIAM

   Hakim Ali Bryant commenced a pro se action pursuant to 42 U.S.C. § 1983 in the

District Court, naming as defendants the City of Philadelphia, Detective Hope Hoover,

and members of a police SWAT team.  Bryant's complaint asserted claims under the

First, Fourth, Sixth, Eighth, and Fourteenth Amendments, alleging that his civil rights

were violated during the SWAT team's execution of a search warrant at his house.  The

District Court granted summary judgment as to several defendants and claims, preserving

for trial only Bryant's Fourth Amendment claims against three members of the SWAT

team: Officer Sean Leatherberry, Officer Erik Bullock, and Sergeant Austin Fraser

(collectively "Defendants").[1]  The District Court liberally construed Bryant's pro se

complaint to allege that Defendants were liable for unlawful seizure, false arrest,

excessive force, and failure to intervene.[2]  Following a bench trial on those claims, the

Court entered judgment in favor of Defendants.  Bryant timely filed this pro se appeal.

---

[1] The District Court granted summary judgment to the City of Philadelphia, Detective
Hoover, and the remaining members of the SWAT team on all claims, and to Defendants
Leatherberry, Bullock, and Fraser on Bryant's claims under the First, Sixth, Eighth, and
Fourteenth Amendments.  Bryant's appellate brief does not challenge the award of
summary judgment and we do not consider it here.  See Laborers' Int'l Union v. Foster
Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("[a]n issue is waived unless a party
raises it in its opening brief").
[2] Prior to trial, the District Court held a pretrial conference in which it gave Bryant 30
days to consult with at least three attorneys to inquire whether they would represent him.

2

We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We review the District Court's findings of fact for clear error, and exercise plenary review over its conclusions of law. See Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 514-515 (3d Cir. 2012). For the following reasons, we will affirm.

I.

In 2010, Detective Hope Hoover, accompanied by a SWAT team, executed a warrant to search 1945 Sigel Street in Philadelphia for evidence relating to a complaint against Bryant's brother, Sakoue Armour, for aggravated assault, child endangerment, and weapons violations. The only people inside the house at the time of the warrant's execution were Bryant and his mother, Janet Armour. After observing a SWAT team outside the house, Janet Armour yelled upstairs to Bryant that the police were outside. She then complied with the officers' instructions to open the door. At that point, an officer pointed a large weapon at her head and instructed her to sit down in the living room. As the SWAT team entered the home, one group of officers proceeded downstairs into the cellar, while another group, which included Defendants Leatherberry, Bullock, and Fraser, ascended the stairs to the second floor where they encountered Bryant exiting a bedroom. Defendant Bullock immediately grabbed Bryant and passed him to Defendant Leatherberry, who instructed Bryant to lie on the ground.

Bryant later informed the District Court that he was unable to retain counsel, and the District Court thereafter scheduled a non-jury trial in accordance with Bryant's request.

At this point, the versions of events offered by Bryant and Defendants at trial diverged. Bryant testified that, once on the floor, he was "jumped on" and felt sharp pains in his back from what he believed to be a "knee or a kick."[3] He stated that he was then handcuffed and raised from the ground, at which time he protested that he was being illegally seized, and one of the Defendants responded "oh, we got a lawyer up here." According to Bryant, he was detained in the upstairs hallway for "at least 45 minutes to an hour" before being brought downstairs. Defendants' testimony, on the other hand, indicated that Bryant was briefly secured in order to protect their safety while clearing the upstairs floor, but each officer denied that anyone stepped on or kicked Bryant's back. Defendant Leatherberry explained that Bryant was asking them questions about why he was being detained and that Bryant "wasn't combative, but he wasn't compliant either." Defendants testified that Sergeant Fraser remained with Bryant while Officers Leatherberry and Bullock continued to search the second floor for other individuals and weapons. Defendants further testified that once the first and second floors were cleared, Bryant was brought downstairs to the living room and, after it was determined that he was not the individual targeted by the warrant, he was released from handcuffs.[4]

---

[3] Bryant testified that as a result of this incident he sustained injuries to his lower back that required medical treatment, and that he went to the emergency room that night and later followed up with his primary care doctor. He did not submit documentation to support those claims. The only medical records submitted to the District Court were from a physical therapist, dated between ten days and six weeks from the incident.

[4] Janet Armour testified that after Bryant was brought downstairs, his handcuffs were removed and he was allowed to sit next to her on the couch unrestrained. Bryant testified that he was in handcuffs until the SWAT team left some time later.

Bryant testified that the SWAT team was in the house for approximately an hour and ten minutes. Janet Armour also testified that the officers were in the house for "over an hour." Detective Hoover and Defendants testified that the search took a total of between 15 and 30 minutes and that no weapons were recovered or arrests made. Prior to departing, Detective Hoover provided Janet Armour with a copy of the search warrant.

Following the bench trial, the District Court issued a memorandum setting forth its findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a). The Court explained that it found Defendants' version of the facts more persuasive than Bryant's, noting that Bryant "was evasive and hostile in his answers during cross-examination, whereas [Defendants] were consistent in the sequence of events which occurred as they secured the second floor." The Court found that Bryant was briefly handcuffed and detained while the officers completed their search of the second floor, but that there was "no evidence, aside from [Bryant]'s evasive testimony," that any of the Defendants jumped on, kicked, or kneed Bryant's back. The Court further found that the search took a total of no more than 30 minutes to complete and that once Defendants determined that Bryant was not Sakoue Armour, he was released from handcuffs. After setting forth these findings of fact, the Court concluded that, as a matter of law, Bryant could not succeed on his Fourth Amendment claims of unlawful seizure, false arrest, excessive force, or his claim of failure to intervene. Accordingly, it entered judgment in favor of Defendants.

5

II.

Bryant argues that the District Court's findings of fact were prejudicial and erroneous, asserting that the evidence he presented at trial "was more believable than Defendants' case" because Defendants offered inconsistent testimony with respect to whether the officers possessed photographs of Sakoue Armour; whether any of the Defendants pointed a weapon at Bryant; and which of the Defendants continued the search of the second floor while Bryant was detained. He specifically focuses on alleged inconsistencies between the videotaped deposition of Defendant Bullock, which was recorded for use at trial, and the live testimony of Defendants Leatherberry and Fraser.

In reviewing the District Court's findings of fact for clear error, we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). Our review of the District Court's factual findings under the clearly erroneous standard is even more deferential with respect to credibility determinations. See United States v. Igbonwa, 120 F.3d 437, 440-41 (3d Cir. 1997). Our review of the trial record in this case convinces us that the District Court's factual findings were not clearly erroneous. The Court's determination that Defendants' testimony was more credible than Bryant's is bolstered by the SWAT Unit Service Report, which corroborates Defendants' testimony about the length of the search, and also by Bryant's failure to provide documentation of receiving emergency room and primary care for back injuries. Our

6

review of the trial transcript convinces us that the alleged inconsistencies Bryant observes in Defendants' testimony are generally not supported by the record.[5]

Having determined that the District Court's findings of fact were not clearly erroneous, we agree with the District Court that Bryant's Fourth Amendment claims cannot succeed as a matter of law. Bryant cannot succeed on an unlawful seizure claim because Defendants detained him for a short length of time and in a reasonable manner pursuant to executing a valid high-risk search warrant in the house he was occupying. See Michigan v. Summers, 452 U.S. 692, 701-03 (1981); Torres v. United States, 200 F.3d 179, 185 (3d Cir. 1999). Similarly, Bryant's false arrest claim fails because the circumstances of his detention did not constitute an arrest. See Summers, 452 U.S. at 699; Baker v. Monroe Twp., 50 F.3d 1186, 1192 (3d Cir. 1995). Those circumstances also do not suggest that Defendants unreasonably applied force to protect their personal safety. See Graham v. Connor, 490 U.S. 386, 394-95 (1989); Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007). In the absence of demonstrating that any of the Defendants engaged in excessive force or committed another constitutional violation, Bryant also cannot succeed on a claim of failure to intervene. See Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002).

---

[5] To the extent Bryant argues that the District Court's decision to allow Bullock's video-taped deposition to substitute for his live testimony deprived him of a fair trial, his argument fails not only because he agreed to the procedure in writing, but also because he was present at the video-taping and had the opportunity to cross-examine Bullock.

Finally, Bryant argues that he did not receive a fair trial and that the District Court showed prejudice against him because the Court took no remedial action after he informed the judge during trial that the Defendants' counsel "answered interrogatories in this case . . . on behalf of the Defendants and without their approval which Plaintiff could not really cross-examine." Bryant provides no further explanation for this assertion, nor does he explain why he was unable to cross-examine Defendants about the interrogatory answers during trial. In any event, we find no support for this claim in the trial record.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.